## Trustees of the Christian Church v. Robert Cox.

1. RELIGIOUS CORPORATIONS—*Ratification of Church Debts.*—A religious congregation, by raising funds to discharge an indebtedness and authorizing the payment thereof, ratifies the indebtedness and becomes liable for what remains unpaid after exhausting the amount raised.

Assumpsit, to recover money on the common counts. Trial in the Circuit Court of Douglas County; the Hon. WILLIAM G. COCHRAN, Judge, presiding. Finding for plaintiff. Appeal by defendant. Heard in this court at the May term, 1898. Affirmed. Opinion filed October 5, 1898.

ECKHART & MOORE and R. F. HALL, attorneys for appellant.

JOHNS & NEWMAN, attorneys for appellee.

MR. PRESIDING JUSTICE GLENN delivered the opinion of the court.

This suit is an action of assumpsit to recover on the common counts, money the appellee claims he has laid out and expended for appellants. The general issue was filed, the case was tried without the intervention of a jury, and a find-

ing for appellee, upon which the court entered a judgment for $779.60.

There is no substantial disagreement as to the facts. The following is an epitome of the testimony :

The Christian Church of Tuscola, having erected a new church building at Tuscola, Illinois, at a cost of between $11,000 and $12,000, it was determined by the regularly constituted authorities of the church to dedicate it on the 4th day of June, 1893. The money to build this church was obtained by donations and subscriptions made by the members of the church, and by individual subscriptions of persons not members of the church, and from the proceeds of entertainments and lectures given under the auspices of the congregation. It was ascertained in April, 1893, before the completion and the dedication of the church, there would be a deficiency of $2,200 to defray the expense of the erection of the church building. An effort was made by the trustees of the church, as such, to borrow the sum of $1,700 of the banking firm of Baughman, Orr & Co. John Madison, a member of the church, having pledged $500 to aid in paying off the deficiency, there remained only $1,700 to be raised. The banking firm declined to loan this money to the church as a corporation, but made a loan of $1,700 to appellee, W. C. Kinedy, Eli C. Murphy, J. P. Hall, Henry Jacobson, N. L. Yelton, and three other individuals by the names of Moberly, Cordor and Mail, who made a note payable to Baughman, Orr & Co., bearing date May 1, 1893, for the sum of $1,700. This note was discounted and the proceeds, $1,682, placed to the credit of John M. Madison, as treasurer of the Christian Church of Tuscola. This fund was paid out by the treasurer to pay the contractor the balance due on his contract for the erection of the church. This note was not paid at maturity. A portion of the principal was paid by subscriptions and donations solicited by the church for the purpose of satisfying and paying off the indebtedness. The balance remaining unpaid was $1,125. This was paid by a loan from Thomas Brian for $1,000 and $125 from John Enlow, to whom appellee, Hall, Kenner and

Jacobson gave their notes. The note ($125) payable to John Enlow, was renewed and signed only by appellee and W. C. Kenner. The note made payable to Thomas Brian for $1,000 was paid by appellee with $500 borrowed of Eli C. Murphy, for which appellee and W. C. Kenner gave him their note for $500, and $500 they borrowed of John Howard, to whom they gave their note for that sum. The note payable to Eli C. Murphy was paid from money received on subscriptions and donations made to pay the church indebtedness, and money collected by the "Willing Workers" for that purpose—a society composed of the members of the Christian Church—and from the proceeds of Sam Jones' lecture, given under the auspices of the Christian Church. The note payable to John Howard and the interest thereon were paid by appellee, and this amount, together with the note payable to John Enlow, with the interest on the same, are the basis of the judgment rendered in this case by the court against the appellants.

At the time the church was dedicated it was announced by Elder Haines, of Cincinnati, who conducted the services, that there was an indebtedness of $2,200 remaining and unpaid for the church building, and before the church could be dedicated that indebtedness must be liquidated. Thereupon the congregation solicited donations and the sum of $1,400 was taken in pledges. At the evening service an effort was made to receive further subscriptions and donations, and not being successful the official board and deacons of the church, who had the business affairs of the church in hand, announced they would assume the balance ($800) of the indebtedness.

It appears from the record of the official board of April 5, 1896, that the trustees reported they had collected and paid to E. C. Murphy (who was the treasurer) on church debt $280.

It does not appear from the face of the note that was given to Baughman, Orr & Co. for $1,700 that it was given or authorized by the trustees of the church, but it does appear from the evidence that the proceeds or the money

obtained on it was used to pay the balance due the contractor, on his contract for building the church. The makers of this note reaped no benefit whatever from this transaction. It was indebtedness created by the building of the church, and the makers of the note to Baughman, Orr & Co., furnished the money to pay it. The money was turned into the church treasury. There is no evidence in the record it was intended as a gift.

Now, if the congregation or corporate body has recognized and ratified this indebtedness of the congregation then the church is liable for it.

When the congregation assembled at the church on the 4th of June, 1893, they assembled for two purposes; one was to raise funds to pay off the church indebtedness, and the other was to dedicate the church. The only church indebtedness that then existed was the one created by the makers of the $1,700 note in furnishing funds to pay the contractor the balance due him. Pledges and donations were taken, it appears from the evidence, until it was claimed a sufficient sum was secured to cover the indebtedness; subsequently the money received on these pledges and donations was collected and paid on this indebtedness, or turned into the church treasury, and by the treasurer paid on this indebtedness. The authority given by the congregation to take and collect these pledges and donations carried with it, by implication, the authority to pay them over for the purpose they were solicited and collected. The congregation, by its different church agencies, have raised the funds and paid all this indebtedness, except what is involved in this suit. We think that the congregation, by raising the funds to discharge this indebtedness and authorizing the payment thereof, ratified this indebtedness and became liable for what remains unpaid. This doctrine is recognized in the case of Palmer v. Wardens, etc., 16 Fed. Rep. 742, cited by counsel for appellee, by stating what would constitute a ratification.

As we hold there was evidence introduced on the trial tending to show a ratification of this indebtedness by the congregation, there was no error in the court modifying

appellants' propositions of law numbered one, two and three, and holding them to be the law as modified.

While it may be true that the holding of the court that the propositions of law asked by appellants numbered four and five are inconsistent with the finding of the court, yet as the finding of the court is correct, this action of the court is not sufficient ground for a reversal of the case. The judgment of the court below is affirmed.